UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

H-D U.S.A., LLC and HARLEY
DAVIDSON MOTOR COMPANY
GROUP, LLC,

        Plaintiffs,        CASE NO. 20-10644
                             HON. DENISE PAGE HOOD

v.

SQUARE WEAR LLC; TAYLOR MADE
ENTERPRISES, LLC d/b/a
TAYLOR MADE APPAREL;
ANTHONY BOWERS; and
DAVID COLEMAN

        Defendants.
_____/

**ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFFS'
MOTION FOR
*EX PARTE* TEMPORARY RESTRAINING ORDER, [#3] MOTION TO
TEMPORARILY SEAL COMPLAINT, [#2] AND NOTICE OF HEARING
ON MOTION FOR PRELIMINARY INJUNCTION**

**I.    INTRODUCTION**

This matter is before the Court on Plaintiffs H-D U.S.A., LLC and Harley Davidson Motor Company, LLC's (collectively "Plaintiffs") Motion for *ex parte* Temporary Restraining Order, Order Accelerating Discovery, and Order Freezing

1

Defendants' Assets, filed March 10, 2020. [ECF No. 3] On March 10, 2020, Plaintiffs also filed a Complaint against Defendants Square Wear LLC, Taylor Made Enterprises LLC, Anthony Bowers, and David Coleman (collectively "Defendants") alleging Trademark Counterfeiting, under 15 U.S.C. § 1114(1) (Count I), Trademark Infringement, under 15 U.S.C. § 1114(1) (Count II), Trademark Infringement, False Designation of Origin and Unfair Competition, under 15 U.S.C. § 1125(a)(1)(A) (Count III), Trademark Dilution, under 15 U.S.C. § 1125(c) (Count IV), Copyright Infringement, under 17 U.S.C. § 101 *et seq.* (Count V), Michigan Trademark Infringement, under MCL § 429.42 *et. seq.* (Count VI), Unfair Competition, under MCL § 445.903 (Count VII), and Trademark Infringement, Unfair Competition, and Misappropriation, under common law (Count VIII).

Plaintiffs' principal place of business is in Milwaukee, Wisconsin. Defendants are located in the cities of Detroit and Romulus, Michigan. Plaintiffs are a "world-famous manufacturer of motorcycles, motorcycle parts and accessories, and a wide variety of other products and services, including apparel." [ECF No. 1, Pg.ID 6] Plaintiffs own the exclusive right to use the HARLEY-DAVIDSON and HARLEY word marks, the Bar & Shield logo, and the "Willie G. Skull" logo (collectively "H-D Marks"). [*Id.* at 2]

Plaintiffs have used and promoted H-D Marks since as early as 1903. [*Id.* at 6] Plaintiffs contend that their apparel merchandising operations are "a significant part" of their business. [*Id.* at 8] Plaintiffs' apparel includes items like riding gear, as well as general clothing such as t-shirts, shirts, sweatshirts, pants, vests, jackets, and hats. Plaintiffs also offer and sell merchandise through a wide range of approved licensees.

Plaintiffs are the owners of the trademarks: 1) "HARLEY-DAVIDSON," 2) "HARLEY," 3) the "Bar & Shield," and 4) the copyright for the "Willie G. Skull" logo, registered on February 3, 2016, U.S. Reg. No. VA 1-987-746. [ECF No.1]

Plaintiffs claim that they have identified 18 unauthorized, counterfeit items at the following websites: (1) https://squarewearco.com hosted by Shopify ("Defendants' Square Wear Website"), (2) third-party websites such as https://poshmark.com/closet/abowers25 ("Defendants' Poshmark Site"), and (3) Defendants' Facebook page at www.facebook.com/squarewearclothing ("Defendants' Facebook Page") (collectively, "Defendants' Sites"). Through an investigative entity, Plaintiffs staged a test purchase from Defendants' Square Wear Website to buy the shirt titled "Men's Harley Davidson Black Long sleeve with Grey Bar and Shield Logo," which prominently displays the "HARLEY-DAVIDSON"

and Bar & Shield logo. [ECF No. 3, Pg.ID 173] Defendants are not authorized distributors of any of Plaintiffs' merchandise or apparel. [ECF No. 1, Pg.ID 37]

Plaintiffs filed the instant suit seeking an *ex parte* Temporary Restraining Order to accelerate discovery and freeze Defendants' assets. Plaintiffs also seek compensatory and statutory damages under 15 U.S.C. § 1117(c) and 17 U.S.C. § 504.

## II. LEGAL ANALYSIS

### A. Temporary Restraining Order

> (1) Issuing Without Notice.  The court may issue a temporary restraining order without written or oral notice to the adverse party or its attorney only if:
> > (A) specific facts in an affidavit or verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition; and
> > (B) the movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required.

Fed. R. Civ. P. 65(b).  A TRO expires in ten days unless the court, for good cause, extends it for a like period or the adverse party consents to a longer extension. Fed. R. Civ. P. 65(b)(2).  Before a court may issue a temporary restraining order, it should be assured that the movant has produced compelling evidence of irreparable and imminent injury and that the movant has exhausted reasonable efforts to give

4

the adverse party notice. *Fuentes v. Shevin*, 407 U.S. 67 (1972); *Boddie v. Connecticut*, 401 U.S. 371 (1971); *Sniadach v. Family Finance Corp.*, 339 U.S. 337 91969); 11 Wright & Miller, Federal Practice and Procedure § 2951, at 504-06 (1973). Other factors such as the likelihood of success on the merits, the harm to the non-moving party and the public interest may also be considered. 11 Wright & Miller at § 2951, at 507-08.

Regarding the irreparable injury requirement, it is well settled that a plaintiff's harm is not irreparable if it is fully compensable by money damages. *Basicomputer Corp. v. Scott*, 973 F.2d 507, 511 (6th Cir. 1992). However, an injury is not fully compensable by money damages if the nature of the plaintiff's loss would make damages difficult to calculate. *Id.* at 511-512. "The loss of customer goodwill often amounts to irreparable injury because the damages flowing from such losses are difficult to compute." *Basicomputer,* 973 F.2d at 512. Courts have held that both potential damage to reputation and likelihood of confusion constitute irreparable injury. *Vuitton v. White,* 945 F.2d 569, 576 (3d Cir. 1991). In copyright cases, § 503 was not meant to give the copyright holder a means to preserve evidence generally. The primary purpose of impoundment is to maintain the feasibility of the eventual destruction of items found at trial to violate the copyrights laws by safeguarding them during the pendency of the action. *First*

*Technology Safety Systems, Inc., v. Depinet*, 11 F.3d 641, 649 (6th Cir. 1993).

Plaintiffs claim that Defendants currently illegally produce and distribute unauthorized apparel in blatant disregard of their rights under Trademark and Copyright laws. Based on the Complaint and the Affidavit submitted, Plaintiffs have shown that Defendants are illegally producing and selling unauthorized apparel. The Court finds, for the purposes of this motion, Plaintiffs have suffered irreparable injury by the loss of customer goodwill, potential damage to their reputation and likelihood of confusion as to the source of the trademarked and copyrighted materials distributed by Defendants.

As to the no notice certification requirement under Rule 65(b), the Sixth Circuit has noted that a showing that the adverse party would have the opportunity to conceal evidence is insufficient to justify proceeding *ex parte*. *First Technology*, 11 F.3d at 651. The application must be supported with evidence that shows that the adverse party is likely to take the opportunity for such deceptive conduct. *Id.*

Plaintiffs argue that notice is unwarranted to prevent the destruction and concealment of evidence. Plaintiffs assert that notice is especially harmful in their case because counterfeiters frequently conceal evidence or dissipate funds in their accounts once notice is given. To support their argument, Plaintiffs cite *North*

*Atlantic Operating Company, Inc. v. Scott*, No. 16-12076, 2016 WL 8671223, at *1 (E.D. Mich. July 1, 2016) ("*North Atlantic*") ("[P]roceedings against those who deliberately traffic in counterfeit merchandise are often ineffective if notice is given to the adverse party prior to service.").

Proponents of *ex parte* injunctions "must do more than assert the adverse party would dispose of evidence if given notice." *First Technology*, 11 F.3d at 650. Rather, the proponent of the temporary restraining order, "must support such assertions by showing that the adverse party has a history of disposing of evidence or violating court orders or that persons similar to the adverse party have such a history." *Id.* at 651.

Here, Plaintiffs have shown that Defendants behavior is commonly found in counterfeit cases. *See North Atlantic*, 2016 WL 8671223, at *1. Plaintiffs also preemptively sent a letter to the U.S. Attorney's office [ECF 6-1, Pg.ID 367] inviting it to investigate Defendants' actions, which underscores how serious counterfeiting matters can become. Plaintiffs explained to the Court that it has not attempted to contact Defendants regarding this Motion and has adequately explained why. Plaintiffs argue that if it had notified Defendants about the instant Motion, Defendants could have taken further actions to harm Plaintiffs by potentially "destroy[ing], mov[ing], or hid[ing] the counterfeit products and evidence." [ECF

7

No. 3, Pg.ID, 158]. The Court concludes that Rule 65(b)(1)(B)'s certification requirement has been met.

### B. Expedited Discovery & Asset Freezing

Plaintiffs also ask for expedited discovery to determine the value of Defendants' financial accounts and the location and sources of the counterfeit merchandise. Although expedited discovery is an extreme remedy, Plaintiffs cite *North Atlantic* to support their request. *North Atlantic* found that good cause for expedited discovery exists "when the true identities of the defendants are unknown, when the moving party alleges infringement, when the scope of the discovery sought is narrow, and when expedited discovery would substantially contribute to moving the case forward." *North Atlantic*, 2016 WL 8671223, at *5. Although Plaintiffs know Defendants' true identities, Plaintiffs limit discovery to the value of the financial accounts and the location of the counterfeit products. The Court finds this request sufficiently narrow to satisfy the principles expressed in *North Atlantic*. And the possibility that Defendants may hide or conceal evidence illustrates that expedited discovery would "substantially contribute to moving the case forward." *Id.* at *5. Based on the Complaint, the Affidavit and other documents submitted by Plaintiffs, a temporary restraining order will be issued as it pertains to Plaintiffs' request for expedited discovery.

Defendants also ask that the Court freeze Defendants' assets. To support their request, Plaintiffs argue that courts have broad powers of equity to "ensure the availability of permanent relief." [ECF No. 3, Pg.ID 189] Plaintiffs argue that their case is analogous to *North Atlantic Operating Company v. eBay Seller dealz_f0r_you*, No. 17-10964, 2017 WL 10841481, at *3 (E.D. Mich. May 3, 2017). In *eBay Seller* the court granted the plaintiff's request to freeze assets to preserve evidence and allow for an equitable accounting. *Id.* at *7.

However, in *Grupo Mexicano de Desarrollo S.A. v. Alliance Bond Fund, Inc.*, the Supreme Court cautioned against using equitable relief to create extreme remedies. 527 U.S. 308, 331-32 (1999). The Court finds that freezing Defendants' assets without notice would be an extreme and unwarranted remedy. Plaintiffs' stated reasons are insufficient to justify freezing Defendants' assets at this time.

### III. CONCLUSION

For the reasons set forth above,

IT IS HEREBY ORDERED that Plaintiffs' Motion for Temporary Restraining Order [#3] is **GRANTED**.

IT IS FURTHER ORDERED that Defendants shall immediately stop promoting Plaintiffs' unauthorized merchandise on their websites and social media accounts, during the term of this Order.

IT IS FURTHER ORDERED that Plaintiffs shall have access to expedited discovery limited only to the value of Defendants' financial accounts and the location and source of counterfeit merchandise.

IT IS FURTHER ORDERED that Plaintiffs' Request to Freeze Defendants' Assets is **DENIED**.

IT IS FURTHER ORDERED that Plaintiffs post an undertaking within five (5) business days of the entry of this Order with the Clerk of the Court in the form of a bond, cash, or check in the sum of $10,000.00, as security for the payment of such costs and damages as may be incurred or suffered by any party as a result of a wrongful restraint hereunder.

IT IS FURTHER ORDERED that a hearing on the Motion for Preliminary Injunction shall be set on **March 26, 2020, at 2:00 p.m.**[1] Plaintiffs must serve Defendants with a copy of this order, Motion, and Complaint by **March 16, 2020**. Defendants must file a Response to the Motion for Preliminary Injunction by **March 20, 2020**. Any Reply must be filed by **March 24, 2020**.

---

[1] In the event that the Courthouse is closed, the hearing will take place via a telephone conference call.

IT IS FURTHER ORDERED that the Motion to Seal [#2] is **GRANTED** only until this Order is served on Defendants or until March 16, 2020, whichever is earlier.

DATED: March 12, 2020

s/Denise Page Hood
Chief Judge, United States District