UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

H-D U.S.A., LLC and HARLEY
DAVIDSON MOTOR COMPANY
GROUP, LLC,

          Plaintiffs,          CASE NO. 20-10644
                                    HON. DENISE PAGE HOOD

v.

SQUARE WEAR LLC; TAYLOR MADE
ENTERPRISES, LLC d/b/a
TAYLOR MADE APPAREL;
ANTHONY BOWERS; and
DAVID COLEMAN

          Defendants.
_____/

**ORDER DENYING PLAINTIFF'S MOTION TO EXTEND TRO [#17] AND
GRANTING PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION
[#3]**

**I.    INTRODUCTION**

**A. Procedural History**

This matter is before the Court on Plaintiffs H-D U.S.A., LLC and Harley Davidson Motor Company, LLC's (collectively "Plaintiffs") Motion for Preliminary Injunction that was filed by Plaintiffs on March 10, 2020. [ECF No. 3] On March 10, 2020, Plaintiffs also filed a Complaint against Defendants Square Wear LLC,

1

Taylor Made Enterprises LLC, Anthony Bowers, and David Coleman (collectively "Defendants") alleging Trademark Counterfeiting, under 15 U.S.C. § 1114(1) (Count I), Trademark Infringement, under 15 U.S.C. § 1114(1) (Count II), Trademark Infringement, False Designation of Origin and Unfair Competition, under 15 U.S.C. § 1125(a)(1)(A) (Count III), Trademark Dilution, under 15 U.S.C. § 1125(c) (Count IV), Copyright Infringement, under 17 U.S.C. § 101 *et seq.* (Count V), Michigan Trademark Infringement, under MCL § 429.42 *et. seq.* (Count VI), Unfair Competition, under MCL § 445.903 (Count VII), and Trademark Infringement, Unfair Competition, and Misappropriation, under common law (Count VIII).

On March 12, 2020, the Court entered an Order granting in part Plaintiffs' Motion for an *ex parte* Temporary Restraining Order, Order Accelerating Discovery, and Order Freezing Defendants' Assets, declining to freeze Defendants' assets. [ECF No. 7]

On March 12, 2020, the Court also granted Plaintiffs' request to seal the docket until Defendants were served. [ECF No. 7] On March 17, 2020, Plaintiffs filed a Motion to Extend the TRO, citing difficulties serving Defendants. [ECF No. 9] The Court granted Plaintiffs' Motion and extended the TRO until April 10, 2020. [ECF No. 10] On April 8, 2020, Plaintiffs filed another Motion to Extend the TRO

until April 21, 2020 or until the Court rules on its Motion for a Preliminary Injunction. [ECF No. 17] Defendants were served on March 18, 2020. Their Responses were due by March 30, 2020. Defendants have submitted no Responses. Plaintiffs' Motion for Preliminary Injunction is currently before the Court.

### B. Factual Background

Plaintiffs' principal place of business is in Milwaukee, Wisconsin. Defendants are located in the cities of Detroit and Romulus, Michigan. Plaintiffs are a "world-famous manufacturer of motorcycles, motorcycle parts and accessories, and a wide variety of other products and services, including apparel." [ECF No. 1, Pg.ID 6] Plaintiffs own the exclusive right to use the HARLEY-DAVIDSON and HARLEY word marks, the Bar & Shield logo, and the "Willie G. Skull" logo (collectively "H-D Marks"). [*Id.* at 2]

Plaintiffs have used and promoted H-D Marks since as early as 1903. [*Id.* at 6] Plaintiffs contend that their apparel merchandising operations are "a significant part" of their business. [*Id.* at 8] Plaintiffs' apparel includes items like riding gear, as well as general clothing such as t-shirts, shirts, sweatshirts, pants, vests, jackets, and hats. Plaintiffs also offer and sell merchandise through a wide range of approved licensees.

3

Plaintiffs claim that they have identified 18 unauthorized, counterfeit items at the following websites: (1) https://squarewearco.com hosted by Shopify ("Defendants' Square Wear Website"), (2) third-party websites such as https://poshmark.com/closet/abowers25 ("Defendants' Poshmark Site"), and (3) Defendants' Facebook page at www.facebook.com/squarewearclothing ("Defendants' Facebook Page") (collectively, "Defendants' Sites"). Through an investigative entity, Plaintiffs staged a test purchase from Defendants' Square Wear Website to buy the shirt titled "Men's Harley Davidson Black Long sleeve with Grey Bar and Shield Logo," which prominently displays the "HARLEY-DAVIDSON" and Bar & Shield logo. [ECF No. 3, Pg.ID 173] Defendants are not authorized distributors of any of Plaintiffs' merchandise or apparel. [ECF No. 1, Pg.ID 37] In response to Plaintiffs' subpoenas, companies, such as Shopify, PayPal, Google Pay, and Poshmark, indicate that Defendants have sold close to 200 unauthorized products bearing the H-D mark. [ECF No. 17, Pg.ID 407]

## II. LEGAL ANALYSIS

### A. Standard of Review

"The court may issue a preliminary injunction only on notice to the adverse party." Fed.R.Civ.P. 65(a)(1). Four factors must be balanced and considered before the Court may issue a preliminary injunction pursuant to Federal Rule of

Civil Procedure 65(a): 1) the likelihood of the plaintiff's success on the merits; 2) whether plaintiff will suffer irreparable injury without the injunction; 3) the harm to others which will occur if the injunction is granted; and 4) whether the injunction would serve the public interest. *In re Delorean Motor Co.,* 755 F.2d 1223, 1228 (6th Cir.1985); *In re Eagle–Pitcher Indus., Inc.,* 963 F.2d 855, 858 (6th Cir.1992); and *N.A.A.C.P. v. City of Mansfield, Ohio,* 866 F.2d 162, 166 (6th Cir.1989). The first factor is the most critical inquiry of the four criteria. *Mason Cnty. Med. Ass'n v. Knebel,* 563 F.22d 256, 261 (6th Cir.1977). In making its determination the "district court is required to make specific findings concerning each of the four factors, unless fewer factors are dispositive of the issue." *Six Clinics Holding Corp., II v. Cafcomp Sys., Inc.,* 119 F.3d 393, 399 (6th Cir.1997). Courts should consider the merits of a requested preliminary injunction even where the validity of the underlying claims will be determined in arbitration. *Am. Exp. Fin. Advisors, Inc. v. Thorley,* 147 F.3d 229, 231 (2d Cir.1998); *Blumenthal v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 910 F.2d 1049, 1052–54 (2d Cir.1990) (The expectation of speedy arbitration does not absolve the district court of its responsibility to decide requests for preliminary injunctions on their merits.); *Wells v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 919 F.Supp. 1047, 1051 (E.D.Ky.1994).

### B. Plaintiffs' Likelihood of Success on the Merits

#### 1. Trademark Infringement and Unfair Competition Claims

A plaintiff alleging a violation of the Lanham Act for trademark infringement and unfair competition must demonstrate that: 1) the plaintiff has a valid and legally protectable mark; 2) it owns the mark; and 3) the defendant's use of the mark to identify goods or services causes the likelihood of confusion. *See Leelanau Wine Cellars, Ltd. v. Black & Red, Inc.*, 502 F.3d 504, 512-13 (6th Cir. 2007) (citing 15 U.S.C. § 1115(a)). To show trademark infringement and unfair competition under 15 U.S.C. § 1114, a plaintiff must show that the use of the allegedly infringing trademark "is likely to cause confusion among consumers regarding the origin of the goods offered by the parties." *General Motors Corp. v. Lanard Toys, Inc.*, 468 F.3d 405, 412 (6th Cir. 2006) (citations omitted); *see also Daddy's Junky Music Stores, Inc. v. Big Daddy's Family Music Center*, 109 F.3d 275, 280 (6th Cir. 1997) (noting that "[t]he touchstone of liability under § 1114 is whether the defendant's use of the disputed mark is likely to cause confusion among consumers regarding the origin of the goods offered by the parties"). Trademark infringement under Michigan law employs the same likelihood of confusion test. *Wilson v. Salem Sportswear, Inc.*, 931 F.2d 1100, 1105 n.1 (6th Cir. 1997). "This Circuit considers the question of whether there is a likelihood of

confusion a mixed question of fact and law." *Lanard Toys*, 468 F.3d at 412 (citation omitted).

The eight factors analyzing likelihood of confusion are set forth in *Frisch's Restaurants v. Elby's Big Boy, Inc.*, 670 F.2d 642, 648 (6th Cir. 1982): 1) strength of the mark; 2) relatedness of the goods or services; 3) similarity of the marks; 4) likely degree of purchaser care; 5) the defendant's intent in selecting its mark; 6) marketing channels used; 7) likelihood of expansion of the product lines; and 8) evidence of actual confusion. *Lanard Toys*, 468 F.3d at 412 (factors rearranged). A plaintiff must demonstrate a likelihood of confusion to obtain equitable relief; a plaintiff must demonstrate actual confusion to recover statutory damages. *Audi AG v. D'Amato*, 469 F.3d 534, 542 (6th Cir. 2006). These factors are only a guide to determine the likelihood of confusion; they imply no mathematical precision. *Homeowners Group, Inc. v. Home Marketing Specialists, Inc.*, 931 F.2d 1100, 1107 (6th Cir. 1991).

Plaintiffs argue that they are likely to prevail with their trademark infringement and unfair competition claims pursuant to the Lanham Act and Michigan law. Plaintiffs contend that they have sufficiently demonstrated that they own the trademarks to their merchandise and that Defendants continue to use the H-D marks without authorization. Plaintiffs also argue that there is a significant

risk that consumers will confuse their legitimate merchandise with Defendants' counterfeit products.

The Court is satisfied that the first two factors have been met. Plaintiffs have demonstrated that they have obtained and own valid and legally enforceable trademarks. Plaintiffs are the owners of the trademarks: 1) "HARLEY-DAVIDSON," 2) "HARLEY," 3) the "Bar & Shield," and 4) the copyright for the "Willie G. Skull" logo, registered on February 3, 2016, U.S. Reg. No. VA 1-987-746. [ECF No.1] There is no question about the trademarks' viability, as they are all currently being used by Plaintiffs.

The Court finds that for purposes of this Motion, the third factor has also been satisfied. It is evident that there is a high likelihood that Defendants' use of the H-D trademark will cause confusion amongst customers. The marks that Defendants have been using on their merchandise are not distinct from any of the legitimate marks featured on Plaintiffs' merchandise. While the Sixth Circuit has acknowledged that courts should consider all of the above-mentioned eight factors when assessing trademark infringement and unfair competition claims, it does not appear that any of them weigh in favor of Defendants. Defendants have also not argued otherwise.

## 2. Trademark Dilution Claim

The Lanham Act also prohibits the "dilution" of famous marks. *See* 15 U.S.C. § 1125(c). For a Plaintiff to establish a federal claim of dilution: "(1) the senior mark must be famous; (2) it must be distinctive; (3) the junior use must be a commercial use in commerce; (4) it must begin after the senior mark has become famous; and (5) it must cause dilution of the distinctive quality of the senior mark." *Kellogg Co. v. Exxon Corp.,* 209 F.3d 562, 577 (6th Cir.2000). Further, direct evidence of dilution is not necessary if actual dilution can be reliably proved through circumstantial evidence—the obvious case is one where the junior and senior marks are identical. *Moseley v. V. Secret Catalogue, Inc.,* 537 U.S. 418, 434.

Plaintiffs argue that they have a legitimate claim based on the relevant analysis that courts rely on when evaluating trademark dilution claims. The Court agrees. Plaintiffs have established that its marks are both famous and distinctive due to Harley Davidson's recognized and well-established commercial footprint. [ECF No. 3, Pg.ID 178] Plaintiffs indicate that other courts have previously found that the H-D mark is highly distinctive and conceptually strong. *See H-D U.S.A., LLC v. SunFrog, LLC*, 311 F. Supp. 3d 1000, 1033 (E.D. Wis. 2018). Plaintiffs also note that courts have found their marks famous. *See, e.g.*, *H-D U.S.A., LLC v. SunFrog, LLC*, No. 17-CV-711-JPS, 2018 WL 1757655 (E.D. Wis. Apr. 12, 2018).

Plaintiffs also argue that their trademarks will be diluted through blurring and tarnishment. Blurring occurs when "the defendant uses or modifies *the plaintiff's trademark* to identify *the defendant's goods and services*, raising the possibility that the mark will lose its ability to serve as a unique identifier of the plaintiff's product." *Ford Motor Co. v. Lloyd Design Corp.*, 184 F. Supp. 2d 665, 678 (E.D. Mich. 2002) (quoting *Deere & Co. v. MTD Products, Inc.*, 41 F.3d 39, 43 (2d Cir. 1994)). And dilution through tarnishment "aris[es] from the similarity between a mark or trade name and a famous mark that harms the reputation of the famous mark." 15 U.S.C. § 1125(c)(2)(C). Plaintiffs argue that their brand is automatically tarnished because Defendants' products are not subject to Plaintiffs' "strict quality-control standards and procedures." [ECF No. 3, Pg.ID 184]

Defendants' commercially use the H-D mark in commerce considering that Defendants' primary use of the mark has been for purposes of selling merchandise with the H-D mark. Since the H-D mark has been famous for generations, Defendants also cannot claim that they used the mark before it was famous.

## C. Irreparable Injury Without the Injunction

It is well settled that a plaintiff's harm is not irreparable if it is fully compensable by money damages. *Basicomputer Corp. v. Scott*, 973 F.2d 507, 511 (6th Cir. 1991). However, an injury is not fully compensable by money damages if

the nature of the plaintiff's loss would make damages difficult to calculate. *Id.* at 511-12. "The loss of customer goodwill often amounts to irreparable injury because the damages flowing from such losses are difficult to compute." *Id.* at 512. "Courts have held that both potential damage to reputation and likelihood of confusion constitute irreparable injury." *Vuitton v. White*, 945 F.2d 569, 576 (3d Cir. 1991).

Here, Plaintiffs have shown that they will be irreparably harmed if Defendants continue to sell merchandise with the H-D mark. The confusion that the Court has found to be caused by Defendants' actions could negatively impact Plaintiffs' relationship with those who purchase their products. Even though it is possible that Defendants could affect Plaintiffs financially by reducing the number of legitimate sales that Plaintiffs receive, Defendants' use of Plaintiffs' trademarks could also certainly damage Plaintiffs' reputation.

### D. Harm to Others

Although Defendants could argue that they would be financially harmed by a preliminary junction, they have not. The Court is convinced that Plaintiffs have submitted enough evidence and reasoning to show that any financial loss to Defendants stems from their illegitimate and unauthorized use of Plaintiffs' trademarks. Any potential financial harm to Defendants is mitigated by the $10,000 security bond that Plaintiffs posted on March 20, 2020. [ECF No. 16]

### E. Public Interest

In this case, the public has an interest in not suffering from the confusion resulting from Defendants' use of the H-D mark. An injunction would ensure that purchasers are not deceived by counterfeit products. The Court finds that Plaintiffs have demonstrated that it would serve the public well to prohibit Defendants from benefitting from Plaintiffs' trademarks.

### F. Weighing the Factors

After weighing the above factors, the Court finds that Plaintiffs are entitled to a preliminary injunction enjoining Defendants from using their trademark.

### III. CONCLUSION

For the reasons set forth above,

IT IS HEREBY ORDERED that Plaintiffs' Motion for Preliminary Injunction [#3] is **GRANTED**.

IT IS FURTHER ORDERED that Defendants shall immediately stop promoting Plaintiffs' unauthorized merchandise on their websites and social media accounts, during the term of this Order.

IT IS FURTHER ORDERED that Plaintiffs shall have access to expedited discovery limited only to the value of Defendants' financial accounts and the location and source of counterfeit merchandise.

IT IS FURTHER ORDERED that Plaintiffs' Motion to Extend the TRO Order [#17] is **DENIED**.

Dated: April 10, 2020

s/Denise Page Hood
Chief Judge, United States District