**IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF MICHIGAN**

| | |
|---|---|
| H-D U.S.A., LLC and HARLEY-DAVIDSON MOTOR COMPANY GROUP, LLC,<br><br>Plaintiffs,<br><br>vs.<br><br>SQUARE WEAR LLC; TAYLOR MADE ENTERPRISES, LLC d/b/a TAYLOR MADE APPERAL; ANTHONY BOWERS; and DAVID COLEMAN,<br><br>Defendants. | **STIPULATED FINAL JUDGMENT AND PERMANENT INJUNCTION AND OTHER RELIEF**<br><br>Case No. 2:20-cv-10644-DPH-RSW<br><br>Hon. Denise Page Hood |

Plaintiffs H-D U.S.A., LLC and Harley-Davidson Motor Company Group, LLC (collectively, "Plaintiffs" or "H-D") and Anthony Bowers and Taylor Made Enterprises, LLC d/b/a Taylor Made Apperal [sic] (collectively, "Defendants")[1] have resolved this matter. Plaintiffs and Defendants (collectively "the Parties") stipulate to the entry of this Stipulated Final Judgment and Permanent Injunction and Other Relief. Accordingly, the Court makes the following findings of fact and conclusions of law:

---

[1] Defendants Square Wear LLC and David Coleman were dismissed from the above-captioned matter. Dkt. 29.

{1153325;v2 }

1. This Court has jurisdiction over the subject matter of this action pursuant to 15 U.S.C. § 1121, and 28 U.S.C. §§ 1331 and 1338(a) and (b), and Defendants acknowledge service of the Complaint in this action. Because the Parties are citizens of different states and the matter in controversy exceeds the sum or value of seventy-five thousand dollars ($75,000.00), exclusive of interest and costs, this Court also has jurisdiction under 28 U.S.C. § 1332. This Court has personal jurisdiction over Defendants, and venue is proper in the Eastern District of Michigan pursuant to 28 U.S.C. §§ 1391(b) and (c).

2. H-D owns all trademark rights, title, and interest in and to the HARLEY-DAVIDSON and HARLEY word marks, H-D's Bar & Shield logo , and variations thereof (collectively, the "Bar & Shield Logo"), and H-D's skull logo and variations thereof (the "Willie G. Skull Logo") (collectively, the "H-D Marks") for motorcycles, motorcycle products and services, and a wide variety of other products and services including, but not limited to, apparel.

3. H-D is the owner of all copyright rights in the Willie G. Skull Logo, all preexisting works containing the Willie G. Skull Logo, and all derivative works of the Willie G. Skull Logo.

4.    H-D is a world-famous manufacturer of motorcycles, motorcycle parts and accessories, and a wide variety of other products and services, including apparel. Founded in 1903, H-D has manufactured, promoted, and sold motorcycles and related products for over 110 years.

5.    Since at least as early as 1903, H-D has used and promoted the HARLEY-DAVIDSON word mark for motorcycles, motorcycle parts, and motorcycle accessories. H-D has used the HARLEY-DAVIDSON word mark in connection with apparel since at least as early as 1915.

6.    Since at least as early as 1980, H-D has used the HARLEY word mark in connection with motorcycles, motorcycle parts and accessories, motorcycle clothing, and various other products and services. H-D has used the HARLEY word mark for decades for apparel and other merchandise. The mark HARLEY has for many years been used interchangeably by the public as shorthand for HARLEY-DAVIDSON.

7.    Since at least as early as 1910, H-D has used a distinctive Bar & Shield Logo in the U.S., representative examples of which are shown below, in connection with motorcycles and related products and services. H-D's rights in the Bar & Shield Logo extend to the mark's design (i.e., the bar and shield design), regardless of any wording contained within that design.

   



8. Since at least 1915, H-D has used the Bar & Shield Logo in connection with apparel.

9. Since at least 2000, H-D has used its Willie G. Skull Logo, examples of which are shown below, in connection with a wide variety of goods including apparel, motorcycles, motorcycle parts, and motorcycle accessories.



10. The H-D Marks are premium brands, and H-D has a reputation for providing a wide variety of high-quality products and merchandise under those brands itself and through numerous licensees. Consistent with its image as a premium brand, H-D positions its licensed merchandise as high-quality merchandise at a premium price point and sets strict standards and guidelines to which all authorized licensed products branded with the H-D Marks must adhere. H-D's licensed products and/or associated labeling and packaging bear one or

more of the H-D Marks. And no merchandise bearing any of the H-D Marks can be marketed or sold without the prior written approval of H-D.

11. H-D markets and sells apparel and other consumer merchandise bearing the H-D Marks at its authorized dealers and at numerous other authorized retail outlets throughout the country.

12. Apparel is a significant part of H-D's business and has been so for many years. For decades, H-D has offered and sold, itself through its websites and authorized retail outlets and through its dealers and licensees, riding gear and apparel bearing the H-D Marks, including men's and women's t-shirts, shirts, tank tops, sweatshirts, sweaters, pants, vests, jackets, and hats. During this same time, H-D has offered and sold through its licensees a wide range of merchandise bearing the H-D Marks, including apparel. Representative examples of such apparel are shown in the Complaint (Compl., ¶ 23, ECF No. 1.)

13. H-D and its dealers and licensees have sold many billions of dollars of products and services under the H-D Marks over the years, and have expended many millions of dollars advertising and promoting those marks through virtually every media. For example, H-D has promoted its H-D Marks and products bearing those marks through dealer promotions, customer events, direct mailings, national television, print, and radio advertisements, and the Internet. H-D's national

network of dealers has also extensively promoted and advertised the H-D Marks and products bearing those marks.

14. H-D owns numerous federal trademark registrations and applications for the H-D Marks, including those set forth in the Complaint. (Compl. ¶¶ 36-39, ECF No. 1.)

15. H-D owns U.S. Copyright Reg. No. VA 1-987-746 for the Willie G. Skull Logo. (Compl. ¶ 41, ECF No. 1.)

16. As a result of H-D's longstanding and extensive use of the HARLEY-DAVIDSON, HARLEY, and Bar & Shield logo marks and the widespread advertising, publicity, promotion, and substantial sales of products and services under those marks, the HARLEY-DAVIDSON, HARLEY, and Bar & Shield logo marks have been well known and famous to both the general public and the motorcycling public for decades.

17. Various federal courts have found that the HARLEY-DAVIDSON, HARLEY and/or Bar & Shield logo marks are famous. See, e.g., *H-D U.S.A., LLC v. SunFrog, LLC*, No. 17-CV-711-JPS, 2018 WL 1757655 (E.D. Wis. Apr. 12, 2018) (finding HARLEY-DAVIDSON, HARLEY, and the Bar & Shield

logo ![Harley-Davidson Bar & Shield logo] famous); *Ronda Ag v. H-D, Inc.,* 108 F.3d 1393, at *1 (Fed. Cir. 1997) (finding HARLEY-DAVIDSON famous) (non-precedential); *H-D Michigan, LLC v. Hellenic Duty Free Shops S.A.,* No. 2:11-CV-00742, 2011 WL 3903278, at *1 (E.D. Wis. Sept. 6, 2011) (finding HARLEY-DAVIDSON and Bar & Shield logo ![logo] famous); *Packaging Supplies, Inc. v. H-D, Inc.,* No. 08-CV-400, 2011 WL 1811446, at *2 (N.D. Ill. May 12, 2011) (finding HARLEY-DAVIDSON and Bar & Shield logo ![logo] famous); *H-D Michigan, LLC v. Hannon,* No. 09-378-P-S, 2009 WL 3762445, at *1 (D. Me. Oct. 28, 2009) (finding Bar & Shield logo ![logo] famous).

18. Defendants have offered, promoted, and sold apparel bearing H-D's Marks or substantially indistinguishable marks (collectively, the "Counterfeit Products").

19. Defendants conducted their business and offered, promoted, and sold the Counterfeit Products online in several ways, including on or through Defendants' website at https://squarewearco.com hosted by Shopify ("Defendants' Square Wear Website"), Defendant's page or store on the Poshmark website at

https://poshmark.com/closet/abowers25 ("Defendants' Poshmark Site"), and at Defendants' Facebook page at www.facebook.com/squarewearclothing ("Defendants' Facebook Page") (collectively, "Defendants' Sites").

20. H-D has identified to date 18 different types of Counterfeit Products offered, promoted, and sold on Defendants' Sites, which are displayed and offered in multiple colors, as shown in the Complaint. (Compl. ¶ 45, ECF No. 1.)

21. Each of the Counterfeit Products bears one or more marks identical to and/or substantially indistinguishable from one of more of the H-D Marks and is a product for which H-D owns federal registrations for such H-D Marks. As shown above, Defendants also use the HARLEY or HARLEY-DAVIDSON marks in the descriptions of each of the Counterfeit Products to further create the false appearance that the Counterfeit Products are genuine H-D products.

22. Additionally, seven of the Counterfeit Products also bear a mark that is confusingly similar to one of the H-D Marks. These Counterfeit Products copy the federally registered "blank" Bar & Shield Logo but substitute the words FUCKIN or BLACK RIDERS for MOTOR CYCLES in the logo.

23. The Counterfeit Products are not subject to the same quality standards, review, and approval process as H-D's own authorized genuine products and those of H-D's authorized licensees bearing the H-D Marks, including without

limitation H-D's quality-control measures and standards for products bearing the H-D Marks.

24. Defendants' unauthorized uses of the H-D Marks detailed above (and as described in more detail in the Complaint (ECF No. 1)), individually and collectively, falsely suggest and are likely to create the mistaken impression that Defendants are authorized H-D licensees, dealers, or retailers and/or that the Counterfeit Products are authorized by, endorsed by, approved by, or otherwise affiliated with H-D when they are not.

25. Defendants' actions as described above (and as described in more detail in the Complaint (ECF No. 1)) are likely to cause confusion or mistake, or to deceive as to the origin, sponsorship, or approval of the Counterfeit Products, and thus constitute trademark counterfeiting in violation of Section 32 of the Lanham Act, 15 U.S.C. § 1114.

26. Defendants' actions as described above (and as described in more detail in the Complaint (ECF No. 1)) are likely to cause confusion, mistake, or deception as to the origin, sponsorship, or approval of the Counterfeit Products and Defendants' commercial activities, and thus constitute trademark infringement in violation of Section 32 of the Lanham Act, 15 U.S.C. § 1114.

27. Defendants' actions as described above (and as described in more detail in the Complaint (ECF No. 1)) constitute trademark infringement, false

designation of origin, and unfair competition in violation of Section 43(a)(1)(A) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(A).

28. The HARLEY-DAVIDSON, HARLEY, and Bar & Shield logo marks are famous, as the term "famous" is used in 15 U.S.C. § 1125(c), and were famous prior to Defendants' use of those marks on the Counterfeit Products, and Defendants' use of the HARLEY-DAVIDSON, HARLEY, and Bar & Shield logo marks on the Counterfeit Products (and as described in more detail in the Complaint (ECF No. 1)) is likely to dilute the distinctive quality of the HARLEY-DAVIDSON, HARLEY, and Bar & Shield logo marks and is likely to tarnish those marks in violation of 15 U.S.C. § 1125(c).

29. Defendants' actions as described above (and as described in more detail in the Complaint (ECF No. 1)) constitute copyright infringement of the Willie G. Skull Logo in violation of the Copyright Act, 17 U.S.C. § 101, et seq.

30. Defendants' actions as described above (and as described in more detail in the Complaint (ECF No. 1)) constitute common law trademark infringement, unfair competition, and misappropriation of H-D's goodwill in the H-D Marks.

31. Defendants' activities described above (and as described in more detail in the Complaint (ECF No. 1)) have irreparably injured H-D, the H-D Marks, and the public.

32. Based on the foregoing findings of fact and conclusions of law, good cause exists for entry of this Stipulated Final Judgment and Permanent Injunction and Other Relief. THEREFORE, IT IS ORDERED AS FOLLOWS:

A. Defendants and their related companies, officers, directors, employees, and agents, and all persons in active concert or participation with any of them who receive actual notice of this judgment by personal service or otherwise, are **PERMANENTLY AND IMMEDIATELY ENJOINED** from directly or indirectly:

(1) using and/or registering the H-D Marks in any unauthorized manner or form including, but not limited to, by themselves and in connection with any other wording or designs, and from using any other marks, logos, designs, designations, or indicators that are confusingly similar to any of the H-D Marks, or likely to dilute the distinctiveness of or tarnish any of the HARLEY-DAVIDSON, HARLEY, and Bar & Shield logo marks including, but not limited to, use on or in connection with the Counterfeit Products, product packaging and labeling, websites, social

media sites, names and titles of the Counterfeit Products, store names, signage, and promotional and advertising materials; and as or as part of any trademarks, business names, domain names, e-mail addresses, URLs, metatags, screen names, social media names, keywords, or other identifiers;

(2) From using H-D's copyrighted Willie G. Skull Logo or any substantially similar work;

(3) From representing by any means whatsoever, directly or indirectly, that Defendants or any products or services offered by Defendants, including without limitation the Counterfeit Products, or any activities undertaken by Defendants, emanate from H-D, or are authorized, licensed, or otherwise affiliated with or sponsored or endorsed by H-D;

(4) From assisting, aiding, or abetting any other person or business entity in engaging in or performing any of the activities referred to in subparagraphs 1-3 above.

B. Defendants are ORDERED to destroy all products and items in their possession or under their control that bear the H-D Marks, to the extent not already turned over to H-D, including without limitation any Counterfeit Products and associated packaging, to confirm such destruction in writing to H-D, and to provide to H-D the identity of all persons and entities that made, produced, advertised or sold the Counterfeit Products including, but not limited to, sellers,

manufacturers, printers, shipping vendors, wholesalers, distributors, retailers and all others that assisted or enabled Defendants to make, advertise, promote, sell, distribute, and transport the Counterfeit Products, including, but not limited to, names, postal addresses, email addresses, website addresses, and phone numbers.

      C.      Plaintiffs are awarded statutory damages in the amount of $5,400,00, pursuant to 15 U.S.C. 1117(c) for counterfeiting of the H-D Marks.

      D.      This Court will retain jurisdiction over any disputes between the Parties, their heirs, successors, and assigns with respect to enforcement of this Final Judgment and Permanent Injunction and Other Relief and the settlement agreement entered into between H-D and Defendants regarding this litigation.

PURSUANT TO STIPULATION, IT IS SO ORDERED

Dated: July 1, 2020                               s/Denise Page Hood
                                                                    United States District Court Judge

## **STIPULATION**

The undersigned stipulate to the entry of the foregoing Final Judgment and Permanent Injunction and Other Relief against Defendants Anthony Bowers and Taylor Made Enterprises, LLC d/b/a Taylor Made Apperal.

Counsel for Plaintiffs

By:/s/Lyndsay S. Ott                                     Dated:   June 5, 2020
WARNER NORCROSS + JUDD LLP
Lyndsay S. Ott (P72949)
lott@wnj.com
45000 River Ridge Drive, Suite 300
Clinton Twp., MI 48038
Phone: 248-784-5080
Fax: 248-603-9680


Defendant Anthony Bowers

By*: /s/Anthony Bowers*                              Dated:   May 12, 2020
       Anthony Bowers


Defendant Taylor Made Enterprises, LLC d/b/a Taylor Made Apperal

By: */s/Anthony Bowers*                              Dated:   May 12, 2020
       Anthony Bowers
       Registered agent,
       Taylor Made Enterprises, LLC
       d/b/a Taylor Made Apperal